LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
Tel:   (212) 490-6050
Fax:   (212) 490-6070
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FILIA SHIPPING S.A.,                              :

        Plaintiff,                              :        07 CV 3034 (MGC)

    - against -                              :        ECF CASE

SINORICHES GLOBAL LIMITED,                        :
SEA FORTUNE CO. LTD. and OCEANLINK
NAVIGATION CO. LTD.                               :

        Defendants.                             :
------------------------------------------------------------X

## AMENDED VERIFIED COMPLAINT

The Plaintiff, FILIA SHIPPING S.A. (hereinafter "Plaintiff"), by its attorneys, Tisdale & Lennon, LLC, as and for its Verified Complaint against the Defendants, SINRICHES GLOBAL LIMITED (hereinafter "Sinoriches"), SEA FORTUNE CO. LTD. (hereinafter "Sea Fortune") and OCEANLINK NAVIGATION CO. LTD. (hereinafter "Oceanlink")(collectively referred to as "Defendants") alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 United States Code § 1333.

2. At all material times, Plaintiff was and still is an entity duly organized and existing by virtue of the laws of Panama.

3. Upon information and belief, at all material times, Defendant Sinoriches was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in China.

4. Upon information and belief, at all material times, Defendant Sea Fortune was and still is an entity duly organized and existing by virtue of foreign law.

5. Upon information and belief, at all material times, Defendant Oceanlink was and still is an entity duly organized and existing by virtue of foreign law.

6. By a charter party dated July 13, 2006, Plaintiff chartered the motor vessel "FILIA" (hereinafter the "Vessel") to the Defendant Sinoriches.

7. Certain disputes arose between the parties regarding Defendant Sinoriches failure to comply with the charter party regarding issuance of bills of lading.

8. Specifically, Defendant Sinorches issued, or permitted its agent to issue, bills of lading not in strict conformity with mate's receipts properly describing the condition of cargo carried on the vessel's deck.

9. As a result of Sinorich's breach of the charter party contract, Plaintiff has suffered losses in the total principal sum of $109,556.19 as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys fees.

10. Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

11. As a result, Plaintiff has commenced arbitration on its claim. Attached hereto as Exhibit 1 is a copy of the Plaintiff's Claims Submissions that were submitted to arbitrator William Robertson on August 27, 2007.

12.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration proceedings conducted pursuant to English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

|   |   |   |   |
|---|---|---|---|
| A. | Principal claim: | | $109,556.19; |
| | i. | Time lost during vessel arrested - $43,956.19; | |
| | ii. | Security provided to cargo interests required due to Sinorich's improper issuance of bills of lading  - $65,600. | |
| B. | Estimated interest on the principal claim at 8.0% for three years | | $ 29,387.55 |
| C. | Attorneys fees and other recoverable costs: | | $30,000.00 |
| Total: | | | **$168,943.74.** |

13.     Upon information and belief, Defendants Sea Fortune and Oceanlink are shell-corporations through which Defendant Sinoriches conducts its business.

14.     Upon information and belief, Defendants Sea Fortune and Oceanlink have no separate, independent identity from Defendant Sinoriches.

15.     Furthermore, Defendants Sea Fortune and Oceanlink are the alter egos of Defendant Sinoriches because Sinoriches dominates and disregards Sea Fortune's and Oceanlink's corporate forms to the extent that Sinoriches is actually carrying on the business and operations of Sea Fortune and Oceanlink as if the same were its own.

16.     Upon information and belief, Defendants Sea Fortune and Oceanlink act as paying agent, or receiving agent, or arrange for other non-parties to satisfy the debts and obligations of Defendant Sinoriches, and/or receive payments being made to Defendant

Sinoriches.

17.     Upon information and belief, Defendant Sinoriches uses Defendants Sea Fortune and Oceanlink as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

18.     Although Sea Fortune and Oceanlink were not named in the charter party, and had no formal relationship to the charter of the Vessel they each have paid one, or several, instalments of the freight owing to Plaintiff from Sinoriches.

19.     It is not common practice in the maritime industry for an allegedly independent company to pay another company's debt, where it has no formal relationship to the underlying charter party.

20.     The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendants.

21.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by any garnishee(s) within the District for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

22. The Plaintiff also seeks an Order from this Court recognizing, confirming and enforcing a forthcoming London arbitration award in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.*

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of **$168,943.74.**

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$168,943.74** belonging to, due or being transferred to, from, or for the benefit of the Defendants, including, but not limited to, such property as may be held, received or transferred in Defendants' name(s), or as may be held, received or transferred for their benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishes to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C. That pursuant to 9 U.S.C. §§ 201 *et seq.* this Court recognize and confirm Plaintiff's forthcoming London arbitration award and/or judgment rendered on the claims had

herein as a judgment of this Court;

D. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E. That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

F. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: September 21, 2007
   Southport, CT

                                        The Plaintiff,
                                        FILIA SHIPPING S.A.

                            By:         /s/ Kevin J. Lennon
                                        Kevin J. Lennon
                                        Nancy R. Peterson
                                        Lennon Murphy & Lennon, LLC
                                        420 Lexington Avenue, Suite 300
                                        New York, NY 10170
                                        Tel:  (212) 490-6050
                                        Fax: (212) 490-6070
                                        kjl@lenmur.com
                                        nrp@lenmur.com

## ATTORNEY VERIFICATION

State of Connecticut  )
                      )   ss: Town of Southport
County of Fairfield   )

1. My name is Kevin J. Lennon.

2. I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

3. I am the attorney for the Plaintiff in this action. I am fully authorized to make this Verification on its behalf.

4. I have read the foregoing Amended Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

5. The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

6. The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated: September 21, 2007
       Southport, Connecticut

_/s/ Kevin J. Lennon_
Kevin J. Lennon

7

# EXHIBIT 1



**SOLICITORS**

130 Fenchurch Street
London EC3M 5LY

FACSIMILE & EMAIL TRANSMISSION

Telephone : +44 (0)20 7929 6060
Facsimile : +44 (0)20 7929 3748
Email : law@watersonhicks.com
Web : www.watersonhicks.com

DATE      :   27 August 2007

PAGES :

TO        :   William Robertson Esq.
REF       :   WR/06/3144/mw
EMAIL   :   william@robmarine.com

CC        :   Sinoriches Global Limited
ATTN    :   Mr Fang
REF       :   F2006-11-29-12
FAX       :   00 86  411 88992109
EMAIL   :   sinoriches@sinoriches.com
                  fang@sinoriches.com
                  mail@sinoriches.com
                  fang050401@hotmail.com

CC        :   Seawind Maritime Ltd
ATTN    :   Antonis Batis
EMAIL   :   seawind@hol.gr

FROM   :   John Hicks/Adrian Chadwick
REF       :   JWH/AC/1192-12


"FILIA" – Charterparty dated 13.7.06

Please kindly find attached:

1.  A copy of our fax/email today to Charterers notifying them of your appointment as Sole Arbitrator in respect of this reference.

2.  A copy of Owners' Claim Submissions and attachments. A hard copy is also being sent by post to you.

Charterers (reading in copy) are requested to note that under the LMAA Terms they are required to serve their Defence submissions within 28 days from receipt of the Claim Submissions.

CONFIDENTIALITY NOTICE
The contents of this fax and any attachments are confidential, for the use of the addressee only and may be legally privileged. If you are not the intended recipient of this fax, or the employee or the agent responsible for delivering it to the intended recipient any copying, distribution or other action taken or omitted to be taken in reliance upon it is prohibited and may be unlawful. Please return the fax and any attachments to us and destroy any copies which may have been made. Thank you.

J.W. Hicks, M.J. Wisdom, B.M. Isola, M.S. Aspinall, T.D. Baker, A.S. Ridings

Regulated by the Law Society

fac 082707 sinoriches

# waterson hicks

Yours faithfully,

*[signature]*
WATERSON HICKS

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N :

FILIA SHIPPING S.A.
incorporated in Panama

Claimants
(Owners)

- and –

SINORICHES GLOBAL LTD
incorporated in the British Virgin Islands

Respondents
(Charterers)

"FILIA" Charterparty dated 13 July 2006

CLAIM SUBMISSIONS

1. By a Time Charterparty on an amended NYPE Form 1946 dated 13 July 2006 the Claimants as Owners agreed to let, and the Respondents as Charterers agreed to hire the vessel "FILIA" ("the Vessel") for one time charter trip on the terms and conditions more particularly set out therein. Attached to these Submissions is a bundle of supporting documents.

2. The Charterparty (Tab 1), to which the Claimants will refer as may be necessary for its full terms and effect provided, inter alia, as follows:-

*"Clause 2*

*That the Charterers shall provide and pay for all the fuel except lubricating oil as otherwise agreed, Port Charges, customary Pilotages, Agencies for clearance and cargo work only, stevedoring, tallymen, boatage, towage canal dues, municipality or state taxes, compulsory watchmen, hatch*

*watchmen and shore cranemen, Commissions, taxes/charges/dues on hire/freight and cargo Consular Charges...and all other usual expenses except those before stated...*

<u>Clause 4</u>

*That the Charterers shall pay for the use and hire of the said vessel at the rate of US$16,500 (Sixteen Thousand Five Hundred Dollars) daily pro rata including overtime payable 15 days in advance United States Currency;...*

<u>Clause 8</u>

*... and Charterers are to load, stow, trim, tally and discharge, lash, unlash, secure, dunnage and undunnage, the cargo at their expense under the supervision and responsibility of the Captain ...*

<u>Clause 15</u>

*That in the event of the loss of time from deficiency and/or default of men or strike/sabotage by officers/crew or deficiency of stores, fire, breakdown or damages to hull, machinery or equipment, grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost...*

<u>Clause 17</u>

*That should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three persons at London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be shipping men.*

<u>Clause 27</u>

*A commission of 1.25 per cent is payable by the Vessel and Owners to Simpson, Spence and Young, London plus 1.25% to Seawind Maritime Ltd plus 1.25% to Sea Power Shipping Enterprises Inc. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.*

<u>Clause 28</u>

*An address commission of 3.75 per cent payable to Charterers on the hire earned and paid under this Charter.*

<u>Clause 30</u>

*Vessel to be delivered to Charterers with bunkers as onboard estimated to be about 950 metric tons of IFO and about 100 metric tons of MDO and to be redelivered with about same quantities as actually on board at the time of delivery. Value of bunkers on delivery to be paid to owners by Charterers along with first 15 days hire payment and Charterers to have the option to deduct value of estimated bunkers on redelivery from last sufficient hire payment/payments. Owners to have the right to supply bunkers for their own account during the currency of this Charter Party which to remain Owners' property, however without intervening with Charterers' loading or discharging operations.*

*Prices applicable both ends: USD 340 per metric tons of IFO and USD 650 per metric tons of MDO, differences between the bunker quantities on delivery and redelivery to be settled along with the final hire statement.*

<u>Clause 62</u>

*Liabilities for cargo claims shall be borne by Owners/Time Charterers in accordance with the Interclub New York Produce Exchange Agreement in 1996 and its amendments thereto.*

<u>Clause 72</u>

*Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against any interest in the vessel, the hire is to be suspended for any period that the vessel remains under arrest, or remains unemployed as the result of such arrest and Owners shall reimburse to Charterers any expenses directly resulting from such arrest. This clause is in-operable should the arrest be caused by any act or omission of Charterers or their Agents. However, if vessel's working is not affected during time of arrest, the vessel should remain fully on-hire.*

<u>Clause 79</u>

*Final accounting of hire and disbursements to be arranged by Charterers best latest within 10 banking days after redelivery as promptly as possible. All undisputed balance/amount to be paid beneficiary party (i.e. to Charterers or to Owners within 3 days once it is estimated such amount is undisputed.)*

<u>Clause 89</u>

*Charterers and/or their agents have option to sign Bills of lading on behalf of Master in accordance with mate's receipts in strictly (sic) conformity of Charterparty.*

<u>Clause 94</u>

*Arbitration at London and English Law applied.*

<u>Clause 96 ESCROW CLAUSE</u>

*Notwithstanding anything contained in this Charterparty, the Charterers warrant that they will not deduct any amount from the hire, except otherwise agreed in a relevant clause and unless they have Owners' written consent to do so any disputed amount is to be deposited in an escrow account with North of England P&I Club in the name of Charterers and Owners until amicable settlement or arbitration award.*

<u>Clause 99 ON-DECK CARGO CLAUSE</u>

*Charterers have the option to load intended cargo on deck/hatch covers at Charterers' time/risk and expense in accordance with vessel's deck/hatch cover strength and vessel's stability at Master's sole discretion which not to be unreasonably withheld. Bill(s) of Lading issued thereof shall be claused as follows "Shipped on deck at Charterers', Shippers and Receiver's risk and expense and responsibility without liability on the part of the vessel, or her Owners for any loss, damage, expense or delay howsoever caused". Charterers to be fully responsible for lashing/dunnaging/ securing/unlashing of cargo at their time and expense.*

3

> *Charterers will also supply vessel with all necessary lashing material and dunnaging required for their account. For any and all cargo loaded on deck Bill(s) of Lading will be signed by the Master, or in case Charterers' or their Agents have been authorised to sign Bill(s) of Lading on Master's behalf, Bill(s) of Lading must be faxed and approved by Owners prior signing.*

3. The vessel was delivered on 24 July 2006 at 0430 hours (GMT) and redelivered on 1 October 2006 at 1200 hours (GMT) a total period of 69.312499 days. At the Charterparty rate of US$16,500 per day the total hire due was US$ 1,143,656.23

4. Wrongfully and in breach of the terms of the Charterparty, the Respondents have failed to pay a balance of hire due to the Claimants in the amount of US$ 43,956.19 as is more particularised in the Claimants' Revised Final Hire Statement attached hereto at Tab 2. In further breach of the terms of the Charterparty the Respondents have also failed to pay the sum in dispute into an escrow account in accordance with Clause 96 of the Charterparty.

5. The Respondents have alleged that the Vessel was off-hire from 2130 hours (GMT) on 15 September 2006 until 1620 hours (GMT) on 18 September 2006 a period of 2.7847 days while the vessel was under arrest at the port of Tartous, Syria at the instigation of the cargo receiver who commenced proceedings before the local courts alleging salt water damage to cargo described below at paragraph 6 which had been shipped on deck. Pursuant to the terms of the Charterparty the Vessel was not off-hire for the period alleged. In particular the Claimants state:

    (a) The Respondents opted pursuant to Clause 99 of the Charterparty to load the cargo on deck. This clause expressly provides that shipment on deck is at the Respondents' time, risk and expense.

    (b) Clause 72 of the Charterparty does not apply as the arrest was caused by the Respondents' act or omission in shipping the cargo on deck and/or wrongfully and in breach of the terms of the Charterparty failing to clause the Bills of Lading as required by Clause 99 of the Charterparty as is set out in paragraph 7 (a) below.

6. The cargo receivers initially presented a cargo claim in the sum of Syrian Pounds 14,700,000 (approximately US$ 290,450 at the current rate of exchange) in respect of alleged salt water damage to 18 Units of SHAC tractors heads shipped pursuant to B/L SGLZJP6706002 dated 15 July 2006 and to 12 Units of SHAC tippers shipped pursuant to B/L SGLZJP6706003 dated 15 July 2006. Following negotiations and in order to allow the Vessel to be released from arrest the

4

Claimants provided security for the cargo claim by way of a cash deposit in the sum of US$ 65,500.

7. The Respondents are liable to fully indemnify the Claimants for any sum, together with interest and costs, which the Claimants are obliged and/or adjudged to pay in respect of alleged damage to 18 Units of SHAC tractors heads shipped pursuant to B/L SGLZJP6706002 dated 15 July 2006 and 12 Units of SHAC tippers shipped pursuant to B/L SGLZJP6706003 dated 15 July 2006. This right of indemnity arises as follows:

    (a) Clause 89 of the Charterparty gave the Respondents the option to sign Bills of Lading strictly on behalf of the Master in accordance with the Mate's Receipts. This obligation is also expressly set out in the Authority to sign Bills of Lading issued by the Master on 7 August 2006 (Tab 3). Clause 99 required that the Bills of Lading issued for on-deck cargo should be claused *"Shipped on deck at Charterers', Shippers and Receiver's risk and expense and responsibility without liability on the part of the vessel, or her Owners for any loss, damage, expense or delay howsoever caused"*. The Mate's Receipts (Tab 4) included such a clause as the cargo was being shipped on-deck. However wrongfully and in breach of the Charterparty the Bills of Lading (Tab 5) issued by Charterers' agents were not so claused.

    (b) The Respondents opted pursuant to Clause 99 of the Charterparty to load the cargo on deck. This clause expressly provides that such shipment is at the Respondents' time, risk and expense.

9. The Claimants are also entitled to be fully indemnified by the Respondents in respect of all legal and other expenses reasonably incurred by the Claimants in the defence of or in the settlement of the cargo claims concerning the alleged damage to 18 Units of SHAC tractor heads shipped pursuant to B/L SGLZJP6706002 dated 15 July 2006 and 12 Units of SHAC tippers shipped pursuant to B/L SGLZJP6706003 dated 15 July 2006.

10. By Clause 62 of the Charterparty liabilities in respect of cargo claims are to be governed by the NYPE Interclub Agreement dated 1996. However apportionment under the InterClub Agreement does not apply in respect of the cargo receivers' claim because:

(a) Clause 4 (a) of the InterClub Agreement requires the cargo claim to be made under a contract of carriage which was authorised under the Charterparty and the unclaused Bills of Lading which were issued by the Respondents were not authorised, and

(b) Clause 99 of the Charterparty is a material amendment of the cargo responsibility clauses in the Charterparty and Clause 4 (b) of the InterClub Agreement requires there to have been no material amendment to the usual cargo responsibility clauses.

AND THE CLAIMANTS CLAIM:-

1. Under paragraph 4 a balance of hire in the sum of US$ 43,956.19, alternatively damages;

2. A declaration that the Claimants are entitled to be indemnified by the Respondents for any sum, together with interest and costs, which the Claimants are obliged and/or adjudged to pay in respect of alleged damage to 18 Units of SHAC tractor heads shipped pursuant to B/L SGLZJP6706002 dated 15 July 2006 and 12 Units of SHAC tippers shipped pursuant to B/L SGLZJP6706003 dated 15 July 2006.

3. A declaration that the Claimants are entitled to be indemnified by the Respondents in respect of all legal and other expenses reasonably incurred by the Claimants in the defence of or in the settlement of the cargo claims concerning the alleged damage caused to 18 Units of SHAC tractor heads shipped pursuant to B/L SGLZJP6706002 dated 15 July 2006 and 12 Units of SHAC tippers shipped pursuant to B/L SGLZJP6706003 dated 15 July 2006.

4. Interest;

5. Costs and interest thereon.

Served this 27 day of August 2007 by Waterson Hicks of 130 Fenchurch Street, London EC3M 5LY, Solicitors for the Claimants (Ref: JWH/AC/1191-12)